## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TAMI L., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-cv-570-CDL |
| | ) | |
| MARTIN O'MALLEY,[1] | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **affirms** the Commissioner's decision.

### I.    Standard of Review

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any

---

[1]    On December 20, 2023, Martin O'Malley was sworn in as the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), O'Malley is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See id*. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). The court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.    Procedural History

The plaintiff protectively filed applications for Title II social security disability insurance benefits and Title XVI supplemental security income on January 15, 2021. (R. 16). The plaintiff alleged that she became disabled on July 1, 2020, due to past thyroid cancer, complications from external beam radiation, nerve damage in both hands, loss of

range of motion and fine motor skills in her right hand, difficulty with swallowing and speaking, post-traumatic stress disorder (PTSD), and depression. (R. 234, 277). She was 45 years old on the alleged onset date. (R. 234).

Before her alleged disability, the plaintiff worked as a program administrator at an assisted living facility in Oregon. (R. 264, 269). The plaintiff testified that she was diagnosed with thyroid cancer in 2015. She worked from 2015 to 2020 at the assisted living facility, but she had to take off work for treatments and illness. (R. 49-50). She testified that she was using FMLA leave and probably worked "more like a part-time job, if that." (R. 49, 52). She left this job when she moved to Oklahoma. (R. 47). The plaintiff has a college degree. (R. 48).

The Commissioner denied the plaintiff's application on initial review and on reconsideration. (R. 16, 144-147, 165-166). The plaintiff then requested a hearing before an Administrative Law Judge (ALJ). (R. 186-188). An ALJ held a telephonic hearing on June 7, 2022. (R. 42). Testimony was given by the plaintiff and a vocational expert (VE). (*See* R. 42-64).

At the hearing, the plaintiff testified that she is 5'9" and weighs less than 200 pounds. (R. 48). She has a drivers permit but not a license. (R. 48). She lives with her husband. (R. 56). She further testified that she was diagnosed with thyroid cancer in 2015. (R. 49). The cancer spread to other parts of her body, necessitating the removal of her "laryngeal nerve, internal jugular vein, the glossal nerve, core muscle, sternal, [and] the adenoid muscle." (R. 50, 53). In addition, her pectoral muscle was moved to protect her carotid artery. (R. 54). She worked from 2015 to 2020, but she had to take off work to

3

attend treatments and deal with illness. (R. 49-50). The plaintiff testified that her radiation therapy had to be terminated prematurely because it was making her vomit. (R. 52). During the last six months of her job, the plaintiff was only working part-time or less. (R. 52-53).

The plaintiff moved to Oklahoma in 2020 to be with her husband and because she "wasn't able to complete a full day, full eight hours a day, four days a week job." (R. 52). She testified that she cannot complete a full day of work because she gets too tired. She believes her fatigue is related to her thyroid surgery. She cannot use her shoulders or her hands. Specifically, she loses sensation in her dominant left hand since the surgery. She cannot write, type, or hold a teapot for very long, or she will lose sensation. (R. 53-54). When she writes, she has pain in her arm and elbow and cannot complete more than three sentences. (R. 54). She cannot raise her right arm above her shoulder blade due to the absence of muscle. *Id*. She stated that she has trouble grabbing objects and washing her hair. (R. 54, 57). She also has limited range of motion in her neck. (R. 55). She also experiences throbbing pain when turning her head to the right. *Id*.

The plaintiff testified that she went to physical therapy at some point to deal with the changes to her body post-surgery, but she has never been to occupational therapy. (R. 54, 55). She takes synthroid, levothyroxine, gabapentin, wellbutrin, bupropion, and hydroxyzine, and marijuana in the form of concentrated oil that she ingests. (R. 51). The plaintiff testified that levothyroxine causes insomnia, and she must make up for sleep during daylight hours three to four days a week. (R. 56). Her naps last between two to four hours. (R. 57). She uses marijuana daily, sometimes two or three times a day depending on

her pain. (R. 48). She also testified that she is receiving mental health care with a therapist for PTSD, anxiety, and depression. (R. 50, 51).

The plaintiff stated that she cannot clean, do dishes, laundry, or vacuum without taking breaks due to pain. (R. 57). She testified that she uses the restroom and showers on her own, but her husband helps wash her hair. (R. 57). The plaintiff testified that she does not get dressed every day, because it is difficult to put on clothes. (R. 58). The plaintiff can grocery shop for 20 to 30 minutes but gets too tired to shop longer. (R. 58-59). She also experiences partial vocal cord paralysis and swallowing difficulties. (R. 59). She stated that she loses her voice and cannot yell or talk loudly. (R. 59). After the ALJ pointed out that he did not notice hoarseness during the hearing, the plaintiff explained that it becomes noticeable after about an hour of talking. (R. 60). She stated that she would lose her voice after the hearing. (R. 60).  She had been sent home from work in the past for losing her voice. (R. 61). She testified that drinking water helps. (R. 61). She stated that because she lost her right hypoglossal nerve, her tongue "is dead, it doesn't move." (R. 59). She chews her food slowly and must focus to avoid choking. (R. 60). She attended speech therapy for these problems. (R. 60).

On June 17, 2022, the ALJ issued a decision denying disability benefits. (R. 35). The Appeals Council denied the plaintiff's request for review, which rendered the ALJ's decision the agency's final decision. (R. 1-4). Following the Appeals Council's denial, the plaintiff timely filed a Complaint in this Court. (*See* Doc. 2). Accordingly, the Court has jurisdiction to review the ALJ's June 17, 2022, decision under 42 U.S.C. § 405(g).

### III.    The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that his impairment or combination of impairments prevents him from performing his previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id.*

Here, the ALJ determined at step one that the plaintiff had not engaged in substantial gainful activity since July 1, 2020, her alleged onset date. (R. 19). At step two, the ALJ found that the plaintiff has the severe impairment of sequalae of thyroid cancer, status post thyroidectomy (20 F.F.R. §§ 404.1520(c) and 416.920(c)). *Id*. The ALJ found that the plaintiff has non-severe impairments of PTSD, anxiety, depressive disorder, and chronic

6

cannabis use. *Id*.

At step three, the ALJ found the plaintiff's impairments do not meet or medically equal a Listing. *Id*. The ALJ stated that he "considered all listings applicable to the claimant's asserted impairments including" Section 13.09: Cancer of the Thyroid Gland. (R. 23). The ALJ explained that the plaintiff's impairment or combination of impairments does not meet the criteria of Listing 13.09, because "there is no evidence she had (A) anaplastic (undifferentiated) carcinoma; or (B) carcinoma with metastases beyond the regional lymph nodes progressive despite radioactive iodine therapy; or (C) medullary carcinoma with metastases beyond the regional lymph nodes." *Id*.

The ALJ also considered the "Paragraph B" criteria governing mental functioning. (R. 21). The ALJ concluded that the plaintiff has mild limitations in the four functional areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 21-22).

At step four, the ALJ determined that the plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b), except as follows:

> Occasional reaching with the right upper extremity. The claimant can frequently handle and finger bilaterally. The claimant can frequently but not constantly make head movements. The claimant can frequently but not constantly communicate orally.

(R. 23). In making this finding, the ALJ addressed the plaintiff's hearing testimony as well as medical opinions, objective medical evidence, and prior administrative medical findings

in the record. (*See* R. 23-32).

Citing the VE's testimony as to a hypothetical person with the plaintiff's RFC, the ALJ found that the plaintiff is capable of performing her past relevant work. (R. 33). The ALJ also found that the plaintiff is a younger individual ("age 18-49 on the alleged disability onset date") with at least a high-school diploma. *Id*. He did not determine transferability of job skills but explained that the Medical-Vocational Rules support "a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." *Id*.

The ALJ proceeded to step five. Based on the VE's testimony as to a hypothetical person with the plaintiff's age, education, work experience, and RFC, the ALJ found that, in addition to her past relevant work, the plaintiff can perform the requirements of representative occupations, including:

> *Investigator, Dealer Accounts*, light exertion, specific vocational preparation (SVP) level 2, Dictionary of Occupational Titles (DOT) # 241.367-038, with 9,200 jobs existing in the national economy;

> *Marker*, light exertion, SVP level 2, DOT # 209.587-034, with 130,000 jobs existing in the national economy; and

> *Routing Clerk*, light exertion, SVP level 2, DOT # 222.687-022, with 100,000 jobs existing in the national economy.

(R. 34). Accordingly, the ALJ concluded at step five that the plaintiff is not disabled. (R. 34-35).

## IV. Discussion

The plaintiff first alleges the ALJ erred in evaluating her mental impairments. Her arguments can be categorized broadly as arguments that the ALJ: (1) failed to perform a

8

proper evaluation of the medical opinion evidence; (2) improperly determined her PTSD, anxiety, and depression were non-severe impairments; and (3) erroneously excluded mental limitations from his RFC determination. The plaintiff further alleges that the ALJ committed reversable error and exhibited bias by listing chronic cannabis use as an impairment at step two. She also challenges the ALJ's credibility determination. The Commissioner argues that the ALJ's decision is free from legal error and is supported by substantial evidence.

### A.  The ALJ's Evaluation of the Medical Opinion Evidence !

#### i.  Dr. LeGrand's Opinion

On June 23, 2021, the plaintiff underwent a psychological evaluation by Denise LeGrand, Psy.D. Dr. LeGrand summarized the plaintiff's mental health history as follows:

> She reported PTSD due to childhood sexual abuse and issues related to her mother's alcohol abuse issues. She also reported a history of domestic violence by a past partner. She reported first becoming unable to work after being diagnosed with cancer October 2016; she had been experiencing PTSD symptoms, pain, and physical problems prior to this, making work difficult. One of her sisters died at age 18 from an inoperable brain tumor so her diagnosis brought up old trauma for her and the rest of her family.

(R. 616). Regarding the plaintiff's mental health treatment history, Dr. LeGrand noted that:

> The claimant is not currently in mental health services but occasionally is seen through Cert-a-Pet for her support animal letter. . . No inpatient mental health admissions were reported. No substance abuse treatment/rehab was reported. No other mental health services were reported. The claimant's current and typical mood was described as calm. No current thoughts of suicide or self-harm were reported. No thought of harm to others reported. No hallucinations or disorders of perception were reported. A family history of substance abuse and depression was reported.

*Id*. On examination, Dr. Legrand noted the plaintiff to be anxious but pleasant, cooperative, and attentive. (R. 618). Her ability to comprehend simple language was average, and her ability to understand moderately complex directions and language was low. *Id*. Dr. Legrand's diagnostic impression was PTSD. *Id*. She found that the plaintiff had a moderate impairment in work-related activities based on her psychiatric symptoms. (R. 619).

Social Security regulations do not require an ALJ to "defer or give any specific evidentiary weight" to medical opinions or prior administrative medical findings but, instead, the ALJ must consider the following factors to assess the weight to be given to a medical opinion: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors tending to support or contradict the medical opinion. 20 C.F.R. § 416.920c(c). The factors to be given the most weight in the ALJ's analysis are the supportability of the medical opinion with reference to objective medical evidence and the consistency of the medical opinion with other medical evidence in the record. 20 C.F.R. § 416.920c(b)(2). The ALJ must discuss these two factors in his written decision, but the other factors do not need to be expressly considered. *Id*.

As to "supportability," the regulations explain that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). The "consistency" factor requires the ALJ to consider whether the medical opinion or prior administrative finding is consistent with other evidence in the

administrative record. 20 C.F.R. § 404.1520(c)(2). The plaintiff asserts that the ALJ failed to discuss the supportability and consistency factors when evaluating the medical opinions and "unjustifiably discounted <u>all</u> of the mental medical opinions." (Doc. 10 at 9). The plaintiff is correct that the ALJ did not always use the words "supportability" and "consistency" when reviewing the four medical opinions at issue, but this does not mean that the ALJ's findings are automatically defective or insufficient.

The ALJ discussed the findings of Dr. LeGrand in his decision. He cited Dr. Legrand's findings that the plaintiff had an anxious mood and affect on examination, but full orientation, normal speech, logical thought process, and adequate insight and judgment. (R. 20). He cited Dr. LeGrand's finding of some diminished recall. *Id*. He also noted Dr. Legrand's diagnosis of PTSD with moderate impairments "in her understanding and memory, sustained concentration and persistence, social interaction, adaption, performing detailed/complex tasks, performing work activity consistently, working without special/additional instruction, work interruptions due to psychiatric symptoms, accepting instructions from supervisors, interacting with coworkers and the public, dealing with stress in a work environment, pace, and performing simple/repetitive tasks." (R. 20, 30).

However, the ALJ found Dr. LeGrand's opinion unpersuasive because her own statements "contradicted" her finding of moderate mental impairment. Specifically, Dr. LeGrand opined that the plaintiff's "application for disability seems to be based primarily on physical factors," and her PTSD symptoms may play a "secondary role in her ability to work." (R. 619). Dr. Legrand further stated that the plaintiff's "symptoms

11

are not severe enough to seek ongoing treatment." *Id*. The ALJ noted that Dr. LeGrand's opinion was further undermined "by the claimant's presentations to her treatment providers, which did not document consistent objective findings due to mental impairments on examination, such as deficits to her behavior, speech, orientation, thoughts, memory, attention, concentration, insight, and judgment." (R. 30).

Thus, the ALJ considered Dr. LeGrand's findings and explained that there were inconsistencies in Dr. LeGrand's own statements in her report, as well as inconsistencies between her opinion and the medical record. The ALJ's written decision adequately explains the ALJ's reasoning for rejecting Dr. LeGrand's opinion, and his decision is supported by substantial evidence.

### ii.    Dr. Walsh's Records and Medical Opinion

The plaintiff presented to Jenny S. Walsh, M.D., on October 23, 2020, to establish care as a new patient after moving to Oklahoma from Oregon. The plaintiff complained of back pain and requested a referral to an endocrinologist for her history of thyroid cancer. (R. 610). Dr. Walsh reported that the plaintiff was on Zoloft but now doing fine. (R. 611). On examination, the plaintiff was alert, pleasant, and not in acute distress. (R. 612). The plaintiff mentioned that she would like a medical marijuana card, and Dr. Walsh completed a urodynamic study "in preparation for a medical marijuana recommendation evaluation with Dr. Hostetler for her cancer associated pain and treatment associated with loss of appetite." (R. 610).

The plaintiff returned to Dr. Walsh on November 6, 2020, and examination again revealed no acute distress. At that time, the plaintiff did "not wish to pursue further

standard medical therapy with narcotics, GABA or SNRI, physical or cognitive behavior therapies." (R. 607). The plaintiff retuned on November 23, 2020, to discuss high blood pressure. (R. 601). The plaintiff stated that her blood pressure had improved since her initial visit. *Id.* Examination again revealed the plaintiff to be alert, pleasant, and in no acute distress. (R. 603).

On September 15, 2021, the plaintiff presented for a follow-up visit with Dr. Walsh. Dr. Walsh noted that the plaintiff is "in the middle of getting disability. Pt is thinking about getting a referral to a mental health doctor. Pt has fear and PTSD from when she had cancer." (R. 1016). Examination again revealed the plaintiff to be alert, pleasant, and in no acute distress. *Id.* Dr. Walsh prescribed the plaintiff hydroxyzine to be taken as needed every 6 hours. *Id.*

The plaintiff again presented to Dr. Walsh on December 23, 2021. Dr. Walsh noted that the "[p]atient is here for disability paperwork from her attorney." Under history of present illness, she noted:

> Pt has anxiety worsened by PTSD. Pt was in a domestic violence situation. Back in 2004-2005, her partner was arrested for felony charges of assault against pt in presence of their children. Pt feared for her life. Pt still feels the effects of this situation today.
>
> For example, pt recently had people come for the roofing of her house without telling her. Pt woke up to hear thumping noises, and it brought pt to a panic. Pt involuntarily reexperiencing events, as memories more than flashbacks. If pt's current husband walks too fast to give her a hug, it will startle her. Another time, her husband went to sit down to watch a movie with her while holding a vape, and pt moved her hands up to guard as if her husband was going to strike her even though he wasn't.
>
> Pt has panic attacks frequently. Pt has panic attacks from people walking too close or too fast to her. Pt also worries if a person is angry or upset

13

when they speak loudly, PT will feel rising panic and will want to avoid the situation and the person.

Pt has good days and bad days. The bad days are bad enough she cannot function. Pt estimates 5-10 days in a month are the bad days to the point she is not able to work. Pt cites she could not work as she would be messed up from poor sleep the night before and her anxiety. Pt would rather cocoon herself alone than anything else on the bad days. Pt spent the last 5 years on FMLA in a job she previously was at for a decade. Pt gets wiped out easily. When facing constructive criticism, pt will focus more on the criticism even if the employer were to sandwich it to soften the blow.

In regards to memory, pt describes there are some events she can't recall as well as others. Pt feels her normal memory is good. She can recall details and follow instructions when needed.

\*\*\*

PT takes hydroxyzine at least once a day. It helps her have conversations normally. Pt will also do stress-reducing non-medication methods like drinking tea or a bath bomb. Pt does use MMJ to help with anxiety though it was originally prescribed to her for pain. Pt has taken Zoloft, but it made her feel like "somebody turned off her brain." Pt will tell people to walk more slowly or talk more quietly around her and avoid situations she knows trigger her PTSD.

(R. 1011-12). Dr. Walsh recommended that the plaintiff continue taking hydroxyzine and prescribed bupropion 150 mg. (R. 1013).

On December 30, 2021, the plaintiff engaged in a telephone visit with Dr. Walsh for the purposed of reviewing disability forms. (R. 1009). Dr. Walsh subsequently completed a Treating Source Questionnaire. (R. 993-997). Dr. Walsh identified the plaintiff's diagnoses as history of thyroid cancer, history of thyroidectomy, hypothyroidism, ulnar neuropathy at elbow in left upper extremity, cancer related pain, and urinary stress incontinence. (R. 993). She identified the plaintiff's symptoms as pain and weakness in her upper extremity, reduced range of motion in her right shoulder,

14

fatigue, and pain along her neck scar and right upper chest. *Id*.

Dr. Walsh further opined that the plaintiff's physical symptoms and limitations contribute to emotional difficulties. (R. 997). Specifically, Dr. Walsh opined that the plaintiff "has PTSD from her serious disease." *Id*. The plaintiff's "[e]motional issues make it harder to concentrate." *Id*. According to Dr. Walsh, the plaintiff would likely be absent more than four days per month and would be off task 20% or more of the day due to symptoms. *Id*.

The ALJ summarized Dr. Walsh's opinion in his Decision, but ultimately found her opinion unpersuasive. As explained by the ALJ:

> [Dr. Walsh's opinion] appears to place too much emphasis upon the claimant's subjective complaints, and it is not supported by her examination records. In particular, Dr. Walsh's examinations were generally unremarkable or showed minimal findings the claimant's right shoulder was forward with reduced range of motion and indicated she had no tenderness in the neck, and normal strength and tone throughout. (Exs. 5F/3 and 12, and 14F/1-2, and 7-8). Of note, the claimant visited with Dr. Walsh on two occasions for the sole purpose of completing this form. (Ex. 14F/4 and 6).

(R. 30-31).

Again, the ALJ did not expressly use the words "supportability" and "consistency" when evaluating Dr. Walsh's medical opinion. However, an ALJ is not required to accept a medical source's opinion; rather, the ALJ need only provide sufficient reasons for rejecting an opinion. *See Mays v. Colvin*, 739 F.3d 569, 574-76 (10th Cir. 2014). Here, the ALJ explained that Dr. Walsh's opinion was not persuasive because it was based on subjective complaints and not consistent with her examinations of the plaintiff, which generally revealed no acute distress. (R. 45). The ALJ also noted that two of the plaintiff's

appointments with Dr. Walsh centered around completing the disability paperwork. (R. 27). In addition, the ALJ recognized that Dr. Walsh initiated the medical marijuana process for the purpose of her cancer pain. (R. 19-20).  Yet, the plaintiff reported that it helped her anxiety. (R. 22). No reversible error occurs where, as here, the ALJ's written decision adequately explains the ALJ's reasoning for rejecting the medical opinion and the finding is supported by substantial evidence.

### iii.    Dr. Eckert's and Dr. Farrell's Opinions

On August 3, 2021, Laura Eckert, Ph.D. reviewed the administrative record in connection with the plaintiff's initial application. (R. 84). Regarding the plaintiff's mental impairments, Dr. Eckert assessed a severe impairment of trauma and stressor related disorders. (R. 82). She rated the plaintiff's limitations as moderate in each of the four paragraph B areas. (R. 83). She assessed mental functional limitations as follows:

> Clmt is able to understand, recall and perform simple and detailed but not complex tasks, and make related judgements. Unable to perform tasks that involve in-depth multilayer decision-making or supervisory tasks. Clmt is able to focus for two hour periods with routine breaks and pace and persist for 8 hour work day and 40 hour work week despite psychological symptoms. Clmt is able to interact with coworkers and supervisors to learn tasks and accept criticism but can only tolerate incidental/occasional public contact. Clmt is able to adapt to work setting and some changes in the work setting.

(R. 117).

On reconsideration, William Farrell, Ph.D. reached similar conclusions. He noted that the plaintiff did "allege a change in conditions" related to her physical impairments, but that "review of the [record] did not substantiate a more restricted determination than on initial decision." (R. 126).

16

The plaintiff contends that the ALJ failed to properly evaluate the prior administrative findings of Dr. Eckert and Dr. Farrell. However, the ALJ cited both opinions, including their RFC determinations. (R. 29). The ALJ ultimately found these opinions unpersuasive because they were not supported by or consistent with the medical record as a whole. *Id*. The ALJ explained:

> Even though each provided a narrative discussion of the medical evidence, they did not fully consider the objective findings and claimant's subjective allegations (Exs. 3A/10-11, 4A/10-11, 5A/4-5 and 8A/4-5). Instead, based on the totality of the evidence and the claimant's allegations, I find the claimant's mental impairments are non-severe. Specifically, Drs. Eckert and Farrell appeared to rely heavily on the opinion of the consultative examiner, Dr. LeGrand, who examined the claimant one time. (Exs. 3A/ 10-11, 4A/10-11, 5A/4-5, 8A4-5, and 7F/5). While Dr. LeGrand's examination showed the claimant had an anxious mood and affect, and some diminished recall, other examinations revealed no evidence of deficits to her behavior, speech, orientation, thoughts, memory, attention, concentration, insight, and judgement. (Exs. 5F/6, 7F/3-4, and 14F/1-2, 7-8, and 26). In fact, the claimant confirmed she found medical marijuana helped her symptoms. (Ex. 14F/6). Moreover, the physicians managed the claimant's symptoms conservatively with medication and she did not participate in psychotherapy or require any psychiatric hospitalizations. (Hearing Testimony and Exs. 7F/2 and 14F/8). In recent visit, from March 2022, the claimant denied anxiety, depression, and changes in her sleep pattern. (Ex. 14F/2).

(R. 30).

Again, the ALJ's findings as to supportability and consistency were not extensive, but the ALJ clearly set forth the medical evidence contradicting the mental consultative examiners' opinions and the ALJ's reasoning is clear. Ultimately, the ALJ's written decision adequately explains the ALJ's reasoning for rejecting the medical opinions related to the plaintiff's mental impairments, and reversal is not warranted on this ground. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).

17

Notably, the plaintiff complains that the ALJ should not have relied on the medical records for discounting the medical opinions, because the plaintiff reported to disability adjudicator Thomas Epperson that she "developed coping skills that allow her to mask her problems" and she masked her problem at her primary care visits. (R. 67). However, these statements were cited and considered by both Dr. Eckert and Dr. Farrell. (R. 83, 125). Although both provided some mental limitations in their RFC analysis, they also found that the plaintiff is capable of performing many other types of work in the national economy despite her mental impairments. (R. 82, 124).

### B.  The ALJ's Step Two Determination

As discussed above, the ALJ found the plaintiff's mental impairments of PTSD, anxiety, and depression to be non-severe. (R. 19). The plaintiff challenges this finding, arguing that the ALJ did not properly evaluate the medical opinion evidence. However, an error at step two of the sequential evaluation concerning impairment(s) is usually harmless when the ALJ, as occurred here, finds another impairment is severe and proceeds to the remaining steps of the evaluation. *See Carpenter v. Astrue,* 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."); *Oldham v. Astrue,* 509 F.3d 1254, 1256–57 (10th Cir. 2007) ("We can easily dispose of . . . arguments[ ] which relate to the severity of [the plaintiff's] impairments. The ALJ . . . made an explicit finding that [the plaintiff] suffered from severe impairments. That was all the ALJ was required to do in that regard. [The plaintiff's] real complaint is with how the ALJ ruled at step five.").

Here, the ALJ determined that the plaintiff has the severe impairment of sequalae of thyroid cancer, status post thyroidectomy, and proceeded to the remaining steps of the evaluation. Accordingly, any error relating to the ALJ's classification of the plaintiff's mental impairments as non-severe is harmless.

### C.     The ALJ's Exclusion of Mental Limitations in the RFC

The plaintiff contends that the ALJ erred by failing to include any mental limitations in the RFC. This argument also lacks merit. The ALJ's decision discussed the plaintiff's subjective statements relating to her PTSD, anxiety, and depression, as well as problems with memory and concentration, in addressing the paragraph B findings and the RFC determination. (*See* R. 21-22). Regarding the first functional area of understanding, remembering, or applying information, the ALJ cited a March 2021 Function Report, wherein the plaintiff reported she had no difficulty following instructions. (R. 21). He also noted medical records wherein the plaintiff "usually maintained normal orientation, attention, concentration, and memory." *Id*. In addition, he recognized that the plaintiff was capable of performing serial 3's and math equations, but not serial 7's. (R. 21-22). The ALJ also noted that the plaintiff had no problem understanding and answering questions in the hearing. (R. 22).

Regarding the second functional area of interacting with others, the ALJ again cited the Function Report, wherein the plaintiff denied difficulty getting along with family, friends, and authority figures and reported that she spent time with others daily. *Id*. The ALJ also recognized the plaintiff's reports to Dr. Walsh of depression, anxiety, irritability,

panic attacks and isolative behavior, but noted that "most examinations were benign and did not reveal deficits to the plaintiff's mood and affect." *Id*.

Regarding the third functional area of concentrating, persisting, and maintaining pace, the ALJ explained:

> In a Function Report, the claimant denied difficulty with her memory, completing tasks, concentrating, and understanding. (Ex. 5E/7). However, in the hearing, while the claimant was testifying about her physical impairments, she mentioned she had a difficulty focusing and concentrating. (Hearing Testimony). Several examinations showed no evidence of deficits to her orientation, memory, attention, and concentration. (Exs. 5F/6, 7F/3-4, and 14F/1-2, 7-8 and 26). In one consultative examination, the examiner observed the claimant had some diminished recall. (Ex. 7F/4). Importantly, the claimant admitted that she could maintain most aspects of her personal care and she confirmed she engaged in activities that required a degree of concentration, including reading science fiction books, watching television, and playing video games. (Hearing Testimony and Ex. 4E/5). During the hearing, the claimant demonstrated the ability to concentrate and her answers to questions were cogent throughout.

*Id*.

In evaluating the fourth functional area of adapting or managing oneself, the ALJ recognized the plaintiff's complaints related to sleep and personal care but noted that such impairments "appear[] to be based primarily on physical, not mental limitation." *Id*.  The ALJ also found that the plaintiff functioned quite independently, citing Dr. LeGrand's report that the plaintiff can manage her finances, perform typical household chores, and attend to her personal care. (R. 22, 616-17). The ALJ also found that the plaintiff adapted easily and behaved appropriately at the hearing. *Id*.

The decision also adequately addressed the medical opinion evidence as it relates to plaintiff's mental impairments, as discussed *supra*.[2] The Court can readily follow the ALJ's reasoning based on the evidence discussed, and the ALJ's RFC determination and findings at step four and five extend logically from the evidence. Accordingly, the Court finds no reversible error. *See Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) (affirming where, *inter alia*, claimant had not "directed [the court's] attention to any medical evidence that was disregarded" related to alleged functional limitation); *see also Branum v. Barnhart,* 385 F.3d 1268, 1271 (10th Cir. 2004) ("The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability.").

### C.    The ALJ's Discussion of a Substance Abuse Disorder

The plaintiff further contends that the ALJ committed reversible error by knowingly and biasedly referencing a substance abuse disorder that she does not have. Specifically, the ALJ determined at step two that the plaintiff's non-severe impairments include chronic cannabis use. (R. 19). Although the plaintiff was prescribed medical marijuana for her pain (R. 324), there is no indication in the record that she used it chronically or was ever diagnosed with chronic cannabis use. According to the plaintiff, the ALJ "**deliberately** and prejudicially violated the regulations" in making this "diagnosis." (Doc. 10 at 12) (emphasis in original).

---

[2]    The plaintiff does not argue that further development of the record was warranted, and any such argument is waived. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007).

"[A]n administrative law judge enjoys a presumption of honesty and integrity . . . which is only rebutted by a showing of 'some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated.'" *Harline v. Drug Enforcement Admin.*, 148 F.3d 1199, 1204 (10th Cir. 1998) (citing *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *Mangels v. Pena,* 789 F.2d 836, 838 (10th Cir.1986) (applying *Withrow* ). "In the absence of such a showing, ALJs must be presumed to be persons 'of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.'" *Withrow,* 421 U.S. at 55, 95 S.Ct. 1456 (quoting *United States v. Morgan,* 313 U.S. 409, 421, 61 S.Ct. 999 (1941)).

The reference to chronic cannabis use does not amount to substantial evidence that the ALJ was biased with respect to the plaintiff's claim. There is no indication in the ALJ's decision that he used the plaintiff's cannabis use in a biased manner to deny the claim. In fact, the ALJ only briefly mentioned the plaintiff's cannabis use. For example, he noted that "[a]lthough the claimant's medical marijuana was prescribed for pain, she acknowledged that it helped her with anxiety." (R. 21). He further mentioned that the plaintiff maintained adequate insight and judgment while using cannabis. (R. 22). Ultimately, the plaintiff's cannabis use appeared to ease her mental symptoms and was therefore factored into the ALJ's decision. However, the ALJ cited other medical and non-medical evidence to support his ultimate RFC and disability determination. Therefore, the Court rejects the plaintiff's allegations that the ALJ's decision was infected with bias.

### D.      The ALJ's Consistency Determination

The plaintiff also argues that the ALJ failed to properly evaluate her subjective complaints. A claimant's subjective complaints of pain or other symptoms alone cannot establish disability. See 20 C.F.R. §§ 404.1529(a), 416.929(a). Rather, "[t]he burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *Branum*, 385 F.3d at 1271.

In evaluating a claimant's statements regarding pain or other symptoms, an ALJ is required to evaluate the claimant's statements about the intensity, persistence, and limiting effects of alleged symptoms. SSR 16-3 outlines the process an ALJ must follow in evaluating such statements. 2017 WL 5180304 (2017); *see also* 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304 at *10. The ALJ must explain "the link between the evidence and credibility determination." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

Here, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.] (R. 28). The ALJ explained:

> The medical evidence on whole does not support the claimant's statements concerning the intensity, persistence and limiting effects of her symptoms. Generally, the record indicates the claimant stopped working because she

23

moved to Oklahoma with husband and not because of her medical conditions. (Ex. 7F/2). Additionally, the severity of the claimant's pain, fatigue and physical limitations are not supported by the record. I note that throughout the extensive record the claimant confirmed she was doing well, disclosed she was not as tired, remarked she was walking, and reported she could move her right arm well. (Exs. 3F/1, 6 and 18, and 5F/2 and 10). I also find that the claimant's activities of daily living contradict allegations of disability. The claimant admitted that she could manage her finances, perform household chores, attend to her personal care, read for pleasure, care for her cats, shop online, play videogames, watch television, and use social media. (Exs. 4E/2-5, and 7F/2-3). Hence, after carefully assessing the claimant's subjective complaints as well as reviewing her medical records, I find her allegations are not consistent with the evidence.

(R. 32).

The plaintiff first complains that the ALJ's conclusion that she moved to Oklahoma to be with her husband "and not because of her medical conditions" is belied by Dr. Grand's report, which noted:

Reason for leaving last job: 'Because I met a guy and moved to Oklahoma; I wasn't able to do my job due to cancer.'

(Doc. 10 at 14). The ALJ cited this portion of Dr. LeGrand's report in his decision. (R. 20). He also referenced a medical record visit from June of 2020, wherein the plaintiff relayed she was getting married and moving to Oklahoma. (R. 25, 480 (stating "Tammi is getting married and moving to Oklahoma!")).

Moreover, the ALJ did not overlook the plaintiff's testimony that she could no longer work full-time prior to moving to Oklahoma. The ALJ summarized the relevant testimony as follows:

The claimant detailed she was diagnosed with thyroid cancer in 2016. The claimant stated after her cancer diagnosis she returned to work from 2016 to 2020. The claimant relayed that although her earnings records indicate she worked full-time, she stated during this period, she was on Family and

24

Medical Leave Act (FMLA), and mostly worked part-time. The claimant disclosed that at that time, she could not work full-time because had doctors' appointments and underwent radiation, which made her feel very sick. She acknowledged in 2020, she moved from Oregon to Oklahoma. Prior to moving to Oklahoma, the claimant stated she stopped undergoing radiation treatment because it caused adverse side effects. She described she vomited and stayed in bed.

(R. 24).

This evidence highlights inconsistencies in the record regarding the plaintiff's reason for quitting her job in Oregon in 2020, and the Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. 42 U.S.C.A. § 405(g). This is especially true as "[c]redibility determinations are peculiarly the province of the finder of fact"—that is, the ALJ, not the court. *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (citing *Kepler*, 68 F.3d at 391). "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *see also* SSR 16-3p. The ALJ has done so here.

The plaintiff also argues that the ALJ discounted her credibility by misstating her testimony and overstating her abilities. For example, the plaintiff claims that the ALJ's statements that the plaintiff can attend to personal care and do household chores are contradicted by her actual testimony, which revealed she had trouble washing her hair and performed the task slowly or with help. (Doc. 10 at 14). However, the ALJ acknowledged the plaintiff's testimony that she could attend to personal care independently but found it difficult to dress and had to have help washing her hair. (R. 25). The ALJ also cited the plaintiff's testimony that she had difficulty washing dishes and doing laundry. (R. 25).

However, in making his credibility determination, the ALJ referenced the plaintiff's Function Report, wherein she stated she could clean, do laundry, vacuum, dust, and wash dishes. (R. 32, 288). He also cited Dr. LeGrand's Report, which indicated the plaintiff can manage her own finances, "do typical household chore[s]," and "adequately perform personal grooming." (R. 616-17). The Court finds the ALJ properly considered the plaintiff's daily activities in evaluating the consistency of her subjective statements.

In addition, the plaintiff claims that the ALJ discounted her credibility by ignoring evidence contradicting his statement that "she was doing well, disclosed she was not as tired, remarked she was walking, and reported she could move her right arm well." The plaintiff points generally, without citing any specific evidence allegedly ignored, to Dr. LeGrand's report and medical records from Dr. Walsh.

The ALJ's decision includes a discussion of the medical evidence and opinion evidence from these sources. (*See supra* 12-16; R. 26-31). The ALJ noted that the plaintiff established care with Dr. Walsh in October of 2020. At that time, the plaintiff reported that she could move her right arm well and examination revealed no acute distress. (R. 26, 611). Although the plaintiff complained of right shoulder and chest pain in November of 2020, she also stated she was not as tired and had been walking. (R. 26, 602). In October of 2021, the plaintiff complained of limited range of motion in her right shoulder, a tingling sensation in her neck, and numbness and tingling in her left hand. (R. 27, 1015). However, a subsequent examination was unremarkable and revealed no acute distress or deformities in musculoskeletal area, and normal strength and muscle tone. (R. 28, 1013). The ALJ also

discussed, and ultimately found unpersuasive, the medical opinions of Dr. LeGrand and Dr. Walsh, as discussed *supra*.

Based on the foregoing, the Court finds the ALJ addressed the plaintiff's subjective statements and provided valid reasons, consistent with the applicable regulations, for finding they are not fully consistent with the medical evidence in the record. These reasons provide substantial evidence supporting the ALJ's consistency determination, and the plaintiff has failed to show reversible error. *See Oldham v. Astrue*, 509 F.3d 1254, 1256-58 (10th Cir. 2007); *see* also *Keyes-Zachary*, 695 F.3d at 1167 (citing *Qualls*, 206 F.3d at 1372) ("[C]ommon sense, not technical perfection, is our guide," therefore "so long as the ALJ 'sets forth the specific evidence he relies on in evaluating the claimant's credibility,'" it is not necessary that he make a 'formalistic factor-by-factor recitation of the evidence.'")). Nothing more was required. *See White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002) (ALJ's evaluation of symptom allegations "warrant particular deference").

## V.     Conclusion

The Court finds that the ALJ's decision is supported by substantial evidence and free of reversible legal error. The decision of the Commissioner finding the plaintiff not disabled is therefore **affirmed**.

DATED this 29th day of March, 2024.

Christine D. Little
United States Magistrate Judge